```
              UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF PENNSYLVANIA


PHIL KLEM,                         :
                                   :
            Plaintiff,             :
                                   :     No. 3:CV-07-284
        -vs-                       :
                                   :     (Judge Kosik)
                                   :
THE PROCTER & GAMBLE               :
DISABILITY PLAN,                   :
                                   :
            Defendant.             :
```

## **MEMORANDUM**

Plaintiff Phil Klem commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), codified as amended at 29 U.S.C. § 1001–1191c, to recover long-term disability benefits he claims were due him under the Procter & Gamble Long-Term Disability Allowance Policy ("LTDA"). See 29 U.S.C. § 1132(a)(1)(B). The Trustees of the plan terminated Klem's benefits after determining he was not totally disabled as required by the plan. Plaintiff Klem has asked this court to overturn the Trustees' decision. The matter is before us because the parties have filed cross-motions for summary judgment.

There is no serious dispute as to the facts bringing us to this point or the appropriate summary judgment standard to be

applied.[1]  The principal issue is to determine the appropriate standard in reviewing the Trustees' determination.

## Background

The plaintiff began his employment with Procter & Gamble (P&G) in 1998.  The plaintiff participated in a disability benefits plan sponsored by P&G.  Under the plan, a participant who is partially or totally disabled is paid benefits for up to 52 weeks from a trust funded by employee contributions and administered by a Board of Trustees consisting of four persons, two of whom are appointed by P&G.  The plan is known as the Procter & Gamble Disability Benefit Plan ("Disability Plan"). Benefits are not the liability of the company itself.

After 52 weeks of disability, participants who continue to be disabled become automatically entitled to benefits from the LTDA.  Benefits under this plan are provided through a trust which is funded by P&G, and not paid out of operating costs.  It is administered by two company-appointed Trustees.

The Trustees of the Disability Plan and LTDA Plan are given discretion to determine benefit eligibility and to interpret the

---

[1]Our Local Rule 56.1 provides that motions for summary judgment shall be accompanied by a separate, short and concise statement of material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing the motion shall include similar statements in response to each paragraph as to which it is contended that there exists a genuine issue to be tried.  The rule concludes that the moving parties' statements will be deemed admitted unless controverted.  The plaintiff has not filed any responses to the defendant's statement of material facts.  See Beard v. Banks, 548 U.S. 521, 527–28 (2006) and Smith v. Lamz, 321 F.3d 680, 682 (7th Cir. 2003), where a Local Rule 56.1, similar to our own rule, was implicated.

plans.  The procedure for benefit determinations is to have the participant first submit a claim to a Reviewing Board, which consists of three persons, which reviews, investigates and makes recommendations on the claim to the Board of Trustees.  The Reviewing Board is an elected board; two of the three members are elected by employee participants and one is appointed by the Trustees.

The plaintiff applied for benefits from the Disability Plan on August 22, 2005.  He supported his application with a Physician's Certificate Form from his primary care physician, Dr. Michael Kovalick.  Noting the plaintiff's condition, the physician indicated the plaintiff could return to work at the end of September, in 2005.  Additional certificates from Dr. Kovalick indicated various conditions with "uncertainty" as to his return to work, "reevaluate at the end of Dec," "unchanged," temporary restrictions, "not able to return to work."  Dr. Kovalick also offered a medical history and listed reports of doctors to whom he referred the plaintiff, such as a neurologist.

On November 30, 2005, the Reviewing Board scheduled the plaintiff for an Independent Medical Evaluation.  Dr. Michael D. Wolk reported the plaintiff could do sedentary work.  The results of this examination were forwarded to the plaintiff's physician with an invitation to discuss Dr. Wolk's report.  It does not appear that Dr. Kovalick accepted the invitation.  Based on Dr. Wolk's report, the Reviewing Board recommended that the plaintiff be placed on partial disability rather than total disability

-3-

effective December 9, 2005.  The plaintiff appealed.  The Reviewing Board requested another outside medical review.  Dr. Howard M. Futerman reviewed the medical history and concluded that there was no objective medical documentation ever provided that would demonstrate an inability to work in any capacity.  The Trustees denied the appeal.

On November 16, 2006, the plaintiff again appealed and submitted additional medical documentation of examinations by other physicians.  At the instance of the Trustees, a Dr. Richard Kaplan, Board Certified in Physical Medicine, was referred the case and all records to date.  On December 26, 2006, he, too, found no credible evidence to support total disability.  The Trustees finally denied the plaintiff's appeal on January 4, 2007.[2]  At this point, the plaintiff had received payments for partial disability until December 7, 2006 for a total of 52 weeks.  After each appeal, the Trustees offered detailed reasons for their decision based on the review of all the evidence.

## Discussion and Conclusion

As we noted at the outset, the principal issue is whether the plaintiff's claim for long-term disability benefits was reviewed under an appropriate standard.

The parties have agreed with the existing authority that when  benefits are denied under a plan which gives the

---

[2] We regret that the sequence of events is not clear from the submitted statements of material facts.  However, because of the limited issue stated below, what we have stated above enables us to address the issue of whether an appropriate standard was used in assessing the plaintiff's claim.

administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of a plan, judicial review of the decision is limited to ascertaining whether the denial is arbitrary and capricious.  See Vitale v. Latrobe Area Hosp., 420 F.3d 278, 281-82 (3d Cir. 2005).  Under Vitale, an administrator's decision can be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the plan's procedures. See id. However, if an administrator with discretionary authority is burdened by a conflict of interest, the "conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)(quoting Restatement (Second) of Trusts § 187 cmt d. (1959)).

In Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 277 (3d Cir. 2000), our Court of Appeals interpreted Firestone Tire to require a heightened review of "discretionary decisions in situations where the impartiality of the administrator is called into question, either because the structure of the plan itself inherently creates a conflict of interest, or because the beneficiary has put forth specific evidence of bias or bad faith in his or her particular case." Goldstein v. Johnson & Johnson, 251 F.3d 433, 435-36 (3d Cir. 2001).  Neither exists here.  There is no evidence of bias[3] or bad faith, and the structure of the

---

[3]As an additional issue, the plaintiff urges that procedural anomalies in this case include reliance of the expert selected for an independent medical examination.  This ignores that two

-5-

plan itself does not create a conflict of interest.  The Disability Plan under which the plaintiff was determined to be partially disabled is funded by employee premium payments.  A disability determination is made by a Board of Trustees consisting of four persons, only two of whom are appointed by P&G.  The Reviewing Board, a majority of which is elected by employees, makes the initial recommendation on disability claims.  The LTDA plan benefits are paid from a trust which is from time to time funded as needed by contributions from the company.  Unlike some plans, there is no direct relationship between the granting of a claim and the operating income of P&G.

In Post v. Hartford Insurance Co., 501 F.3d 154 (3d Cir. 2007), after considering the factors suggested in Pinto for evaluating the structure of plans such as the present one, the court noted concern when a plan is funded on a case by case basis where an administrator pays claims out of its operating budget rather than from segregated monies that the employer sets aside.  Id. at 163.  Similarly, in Maciejczak v. Procter & Gamble Co., 246 Fed. App'x. 130 (3d Cir. 2007)(unpublished), the court held:

> Employer-funded plans present a decreased "risk of a conflict of interest... because the employer has 'incentives to avoid the loss of morale and higher wage demands that

---

additional independent doctors examined the plaintiff.  In fact, although it appears the plaintiff's doctor was afforded an opportunity to respond to Dr. Wolk, he chose not to.  The Supreme Court in Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) held that administrators are not obliged to accord special deference to opinions of treating physicians.  Nor is an explanation necessary if the administrator credits reliable evidence which conflicts with a treating physician's evaluation.

-6-

> could result from denials of benefits.'"
> Moreover, "the typical employer-funded...plan
> is set up to be actuarially grounded, with
> the company making fixed contributions to
> the...fund...."  In such circumstances, the
> employer "'incurs no direct expense as a
> result of the allowance of benefits, nor does
> it benefit directly from the denial or
> discontinuation of benefits.'"  Conversely,
> heightened scrutiny may be appropriate when
> the "plan is 'unfunded,' that is, when it
> pays benefits out of operating funds rather
> than from a separate ERISA trust fund."
>
> Here, P&G pre-funds a Long-Term Disability
> Trust Fund, and the plan is administered by a
> Board of Trustees consisting of P&G
> employees.  The Trustees receive no
> additional compensation for their service on
> the Board.  Moreover, P&G's contributions to
> the plan are determined based on an estimate
> of the current year's claim liability and the
> plan's investment return.  Management
> determines the appropriate annual
> contribution, if any, according to
> "anticipated claims and an actuarial
> determination of unrevealed costs."
>
> These features counsel against any
> heightening of the arbitrary and capricious
> standard.  Our cases "have noted that a
> situation in which the employer establishes a
> plan, ensures its liquidity, and creates an
> internal benefits committee vested with the
> discretion to interpret the plan's terms and
> administer benefits does not typically
> constitute a conflict of interest."  That is
> exactly what P&G has done here.  Although, as
> the District Court noted, P&G's contributions
> are not "fixed," We are somewhat dubious
> about the District Court's conclusion that
> this fact warrants any ratcheting up of the
> standard of review.

Maciejczak, 246 Fed. App'x at 132 (all internal citations omitted).  The same result is to be found in Stratton v. E.I. DuPont De Nemours & Co., 363 F.2d 250 (3d Cir. 2004), and in our own district.  Carpenter v. Procter & Gamble Disability Benefit

-7-

Plan, No. 03-399, 2006 WL 860060 (M.D. Pa. Mar. 31, 2006)(concluding that a "slightly heightened arbitrary and capricious standard" was appropriate in the case, but noting our Court of Appeals held it was not clear how to employ such a standard).

Recently, the United State Supreme Court in Metropolitan Life Insurance Co. v. Glenn, 128 S.Ct. 2343 (2008), decided that often when an entity that administers a plan, "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," it creates a dual role and a conflict of interest. Id. at 2346. Of course, this is not our case. Interestingly, the court said it would not overturn Firestone by adopting a rule that would bring about near universal review by judges; conflicts being but one factor among many. See id. at 2350.

Even if we assume a slightly heightened standard in this case, the facts pertinent to our determination are essentially undisputed. We believe the Trustee's decision was rationally noted in credible medical evidence. Therefore, defendant's motion for summary judgment will be **GRANTED**. An appropriate Order will issue.

```
                  UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF PENNSYLVANIA


PHIL KLEM,                        :
                                  :
              Plaintiff,          :
                                  :      No. 3:CV-07-284
         -vs-                     :
                                  :      (Judge Kosik)
                                  :
THE PROCTER & GAMBLE              :
DISABILITY PLAN,                  :
                                  :
              Defendant.          :
```

## **ORDER**

AND NOW, this 7th of August, 2008, IT IS HEREBY ORDERED THAT:

1. The Defendant's motion for summary judgment is **GRANTED**;
2. The Plaintiff's motion for summary judgment is **DENIED**;
3. Judgment is hereby entered in favor of Defendant and against Plaintiff;
4. The Clerk of Court is directed to **CLOSE** this case.


*s/Edwin M. Kosik*
United States District Judge